No. 59622.—Wallworth Company *v.* United States, protest 197216–K (New York).

WILSON, Judge: This protest is against the collector's classification of a certain waste product, invoiced as "Colored Woolen Thread Waste," under paragraph 1105 (a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, at the rate of 10 cents per pound as wool thread or yarn waste. Plaintiff claims the merchandise properly dutiable under paragraph 1555 of the tariff act, as modified by the aforesaid trade agreement, at the rate of 4 per centum ad valorem as "Waste, not specially provided for."

The record discloses that the importation in question, represented by plaintiff's exhibit 2, is a thread or yarn waste, consisting of wool threads and threads which are a combination of wool and cotton, wool and rayon, or all cotton.

An analysis (plaintiff's exhibit 1) of a sample of the imported material indicates the following:

|  |  |  |
|---|---|---|
| Yarns composed of wool, cotton and rayon fibers | Cotton fibers | 21. 9% |
|  | Rayon fibers | 12. 5% |
|  | Wool fibers | 45. 3% |
|  | Non-fibrous material | 2. 0% |
| Yarns composed wholly of wool fibers |  | 18. 3% |
|  |  | 100. 0% |

At the trial of the case, the Government called no witnesses. All testimony in the record was adduced by the plaintiff. Eight witnesses, all of whom had vast experience in the wool waste business, testified. The record clearly discloses the accurate knowledge of all the witnesses with the textile waste business and, specifically, with the product now under consideration.

The peculiar qualifications and experience of all the witnesses lend great weight, in our opinion, to their uncontradicted testimony concerning the nature of the imported merchandise. As disclosed by the record, these experts in their field were in substantial agreement concerning the facts essential to the determination of this case. Their testimony may be summarized as follows:

The terms "wool thread or yarn waste," as understood in the trade handling this product in the United States, has a well-known meaning that has, for many years, including a period long prior to the enactment of the Tariff Act of 1930, been definite, uniform, and certain of understanding generally throughout this country (R. 10–11; R. 31, 43; R. 58–60; R. 73–74; R. 78–79; R. 83; R. 95–96; R. 101–102). Such term refers to a waste, composed of yarns or threads which are 100 per centum virgin wool and/or virgin wool and wool waste, free from synthetic or vegetable fibers (R. 10–11; R. 31, 43; R. 58–60; R. 73–74; R. 78–79; R. 83; R. 95–96; R. 101–102), with an allowance or tolerance of about 2 per centum for impurities, such as oil, grease, and dirt, etc. (R. 73; R. 78; R. 83; R. 95; R. 101).

The merchandise at bar is not a "wool thread or yarn waste" (R. 13; R. 44; R. 61; R. 74; R. 78; R. 84; R. 97; R. 103) and would not be accepted in the trade as a good delivery of wool thread or yarn waste (R. 15; R. 45; R. 62; R. 74; R. 80; R. 85; R. 98; R. 103–104).

The waste in question is known as "merino thread" waste (R. 15; R. 61; R. 85; R. 103); "merino packing yarn" (R. 45); "journal box packing" (R. 74); and as "merino packing thread" waste (R. 79); and is used as journal box packing waste to lubricate the axles of railroad cars, street railway cars, etc. (R. 15; R. 45· R. 62; R. 74; R. 79–80; R. 86; R. 97; R. 104–105).

It is a soft yarn. It will absorb a lot of oil for the purpose for which it is used, and it is a lower priced yarn than a wool yarn would be (R. 15).

It is not commercially feasible to remove the animal fiber thread, the wool, from the waste before the court, because, in so doing, the wool fiber threads would be weakened, rendering them unfit for wool purposes (R. 16; R. 46; R. 68; R. 74; R. 80; R. 97–98; R. 104).

The imported merchandise (plaintiff's exhibit 2) does not come into competition commercially with wool, because of the fact that the defibering of this material would not be desirable from an expense standpoint, and, further, such process would render the fibers unsuitable for respinning into yarn (R. 15–16; R. 45–46; R. 63–64; R. 74; R. 80; R. 84–85; R. 97; R. 104).

The wool waste provisions of the tariff act have been previously passed upon by this and our appellate court. In *P. Silverman & Son* v. *United States*, 27 C. C. P. A. (Customs) 324, C. A. D. 107, the merchandise consisted of so-called Palmer or sanforizing blankets, imported in sizes, varying from 3 feet to 40 feet in width and from 5 feet to 50 feet in length. It appeared that the articles were in a wornout condition and useless for their original purpose in textile-finishing operation. The merchandise there imported was sold as waste. It was conceded before the appellate court that the collector's classification of the merchandise as "woolen rags" (paragraph 1105(a), Tariff Act of 1930) was erroneous, and no consideration was given by the court to the woolen rag question, but as between "wool wastes not specially provided for," in said paragraph, and "Waste, not specially provided for," in paragraph 1555 of the Tariff Act of 1930. The court held the latter paragraph applicable to the said merchandise. In its holding, the court stated, *inter alia*, at page 327:

For reasons presently stated, we must conclude that the contention of the Government and the holding of the majority of the trial court cannot be sustained. We agree with the contention of the importer that Congress never intended to include within the term, "all other wool wastes not specially provided for" in paragraph 1105 every form of waste that might have a wool characteristic. * * * An analysis of paragraph 1105 discloses that everything named therein specifically had, either at the time of the passage of the act or at some time in the prior history thereof, a use in the wool industry in which it came in direct competition with wool.

While the court in the *Silverman* case, *supra*, had before it for consideration only the provision in paragraph 1105 of the Tariff Act of 1930 covering "all other wool wastes not specially provided for," it reviewed the legislative history of that paragraph, relating to all the materials covered thereby, and held that Congress, in preparing the wool waste provisions, was only concerned about wastes of wool, which would influence and affect the sale of wool, and that a waste which, although composed of wool, could not replace or be competitive with wool, was not intended to be subjected to the provisions of the paragraph.

As to the types of merchandise covered by the provisions of paragraph 1105 here in question, the Summary of Tariff Information, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means, House of Representatives, at the time the bill which became the Tariff Act of 1930 was under consideration, discloses the following:

At page 1688—

#### WOOL WASTES AND BY-PRODUCTS

**Description and uses.**—Paragraph 1105 covers the materials which are referred to in paragraph 1103 as wool wastes and wool-waste material. The term "wool waste" does not imply something that is valueless but rather a part of the original raw material that has been discarded, at least temporarily, in the sequence of manufacturing processes. A part of this waste is remanufactured in the mills where made and a part is sold for manufacture elsewhere. * * *

At page 1689—

Thread or yarn waste consists of pieces of yarn broken or damaged at the spinning machine or subsequent to spinning. It is "hard" waste and must be garnetted to reduce it to a fibrous state before it is ready for reworking.

The testimony in the case at bar indicates that the waste in question is a "soft" yarn (R. 15), whereas it appears that the thread or yarn waste intended to be covered by paragraph 1105 is a "hard" waste, which must be garnetted to reduce it to a fibrous state before it is ready for reworking. Further, the uncontradicted testimony of plaintiff's witnesses is to the effect that the imported merchandise does not come into competition commercially with wool, because of the fact that the defibering of the material would be impracticable from the standpoint of expense and, for the further reason, that such process would render the fibers unfit for respinning into yarn. We are, therefore, of opinion that the principle announced in the *Silverman* case, *supra*, is controlling in the classification of the merchandise at bar and that a waste, such as that here in question, which does not enter into competition with wool and which is not used in the industry for those purposes for which wool is used, is not classifiable under the wool waste provisions of the tariff act. Accordingly, the merchandise at bar is not dutiable as wool thread or yarn waste, as classified. See *Fairfield Wool Co., Inc.* v. *United States*, 33 Cust. Ct. 199, C. D. 1653.

In view of our holding herein, we deem it unnecessary to discuss the applicability of other provisions of the tariff act, to which our attention has been called by counsel for the plaintiff in its brief.

For the reasons aforesaid, we hold the journal box packing waste here in question properly dutiable under paragraph 1555 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, at the rate of 4 per centum ad valorem as "Waste, not specially provided for," as claimed. The protest claim in this respect is sustained. Judgment will be rendered accordingly.